IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

ANTHONY COMPTON                                                          PLAINTIFF

       v.                          Civil No. 1:07-cv-01002

SHERIFF JAMES ROBINSON;
JAIL ADMINISTRATOR DAVID
OLIVER; and JAILER WILLIE REED                                          DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Anthony Compton (hereinafter "Plaintiff" or "Compton"), filed this action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2005), the Honorable Harry F. Barnes, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

Compton is currently incarcerated in the Arkansas Department of Correction in the East Arkansas Regional Unit located in Brickeys, Arkansas. He contends his constitutional rights were violated in November and December of 2006 while he was incarcerated at the Ashley County Detention Center in Hamburg, Arkansas. Specifically, he contends his rights were violated by the conditions to which he was subjected while confined to administrative or disciplinary segregation.

Defendants filed a motion for summary judgment (Doc. 15). To assist Compton in responding to the motion, I propounded a questionnaire (Doc. 24). Compton filed a timely response to the questionnaire (Doc. 24) and the motion is now ready for decision.

## I. Background

Compton was booked into the Ashley County Detention Center (ACDC) on November 14, 2006. *Plaintiff's Response* (Doc. 25) (hereinafter *Resp.*) at ¶ 1(A). He had been sentenced to a term

-1-

of twelve years of imprisonment.  *Id.* at ¶ 1(B).  He remained incarcerated at the ACDC until January 1, 2007.  *Id.* at ¶ 2.

David Oliver was employed by the Ashley County Sheriff's Department as the jail administrator of the ACDC from January 3, 2005, until August 18, 2006.  *Resp.* at ¶ 3; *Defendants' Exhibit* (hereinafter *Defts' Ex.*) 1 at ¶ 1.  He was re-hired as jail administrator on October 6, 2006, and worked in that capacity until December 31, 2006.  *Id.*  As jail administrator, Oliver was responsible for the day-to-day operation and administration of the detention center.  *Defts' Ex.* 1 at ¶ 2.

On November 23, 2006, Oliver was notified by Jailer Willie Reed that Compton was spitting on the jail staff and other inmates.  *Defts' Ex.* 1 at ¶ 3.  It is a violation of ACDC policy for an inmate to spit on others in the jail.  *Resp.* at ¶ 6; *Defts' Ex.* 1 at ¶ 3.

According to Oliver, Compton was notified by both himself and Reed that it was a violation of jail policy to spit on others and was given an opportunity to explain what had occurred.  *Defts' Ex.* 1 at ¶ 4.  After listening to both sides of the story, Oliver indicates he decided Compton violated jail policy and made the decision to place Compton in disciplinary segregation to regulate, control and maintain the safety and security of the detention facility.  *Id.* at ¶ 5.

Compton, however, asserts he never talked to Oliver when Reed placed him in administrative segregation.  *Resp.* at ¶ 8(A).  Instead, Compton states Reed merely asked the control tower to call Oliver and inform him that Compton had spit on one of the helpers.  *Id.* at ¶¶ 5-8(B).

The disciplinary segregation cells included a mattress, a stool bolted to the floor, a toilet, and sink with running tap water.  *Resp.* at ¶ 9(A); *Defts' Ex.* 1 at ¶ 6.  However, Compton maintains Reed, upon orders of Oliver, took his clothing and mattress away when he was placed in the cell.  *Resp.* at ¶ 9(A).

According to Defendants, the temperature in the entire ACDC is maintained at 68 degrees which is within the standards set forth by the Arkansas Jail Standards Commission.  *Defts' Ex.* 1 at

-2-

¶ 6.  Compton states:  "The temperature in the entire ACDC is maintained at 68 degrees when Mr. Oliver is not within the standards of the unit."  *Resp.* at ¶ 9(B).  It is not clear what Compton means by this statement.  However, it is clear that Compton maintains the temperature in the administrative segregation cell was extremely low.  *See e.g., Resp.* at ¶¶ 11(C) & 15.

While Oliver was jail administrator, he has found that many of the inmates are initially very upset at being placed in disciplinary segregation and often attempt to cause harm to themselves and destroy jail property.  *Defts' Ex.* 1 at ¶ 7.  Incidents include inmates using their clothing to clog and flood toilets or to attempt to hang themselves or choke themselves unconscious.  *Id.*  For this reason, an inmate placed in disciplinary segregation has his outer garments temporarily removed until it is established that the inmate is unlikely to attempt to use his clothing to harm himself or destroy property.  *Id.*

During the initial period of Compton's disciplinary segregation, his outer garments were removed until it was established he was unlikely to attempt to use his clothing to harm himself or destroy property.  *Defts' Ex.* 1 at ¶ 8.  After the initial period, Compton's outer garments were returned to him.  *Resp.* at ¶ 11(B); *Defts' Ex.* 1 at ¶ 8.  However, Compton states he was given a pair of pants about four sizes too large.  *Resp.* at ¶ 11(B).  Compton became upset because the pants were too large and refused to put the pants on.  *Id.* at ¶ 11(C).

According to Defendants' records, while in disciplinary segregation, on December 1st, Compton set off the fire sprinkler in his cell by climbing on top of the sink or on top of the bunk.  *Defts' Ex.* 1 at ¶ 8; *Defts' Ex.* 2 at page 3.  Defendants' narrative report about the incident indicates Compton set the fire alarm and water sprinklers off a few minutes after he asked to talk to Oliver and was told he was not available.  *Defts' Ex.* 2 at page 3.

Compton does not deny he set off the sprinklers.  *Resp.* at ¶ 12(A).  However, he indicates it occurred when he got upset and threw a plastic up against the cell wall.  *Id.*  He indicates the cup hit the fire sprinkler in the cell.  *Id.*

Compton agrees Oliver had left the unit before he got upset and threw the plastic cup against the wall. *Resp.* at ¶ 12(B). Oliver then came back and ordered Compton moved. *Id.* at ¶ 12(B). The water was turned off and Compton was moved to the cell next door. *Id.* at ¶ 12(C).

Compton was shackled to a stool. *Defts' Ex.* 1 at ¶ 10. Defendants maintain this was done to prevent Compton from falling and injuring himself and also to prevent damage being done to the fire sprinklers in the cell. *Id.* The shackles placed on Compton were attached to the stool which was bolted to the floor. *Resp.* at ¶ 12(E); *Defts' Ex.* 1 at ¶ 11.

According to Compton, he remained shackled to the stool until December 11th. *Resp.* at ¶ 12(E). During this time, Compton states he was not allowed to use the restroom. *Id.* He indicates the shackles were too short for him to be able to use the toilet. *Resp.* at ¶ 12(F). He asserts he was forced to urinate on the same area of the floor he was using for sleeping and eating. *Id.* at ¶ 12(F). Compton asserts the jail shift report[1] indicates that on December 7th another shackle was added so he could move around some and was able to reach the toilet. *Id.* at ¶ 12(G).

Compton disputes that the shackles were for his safety. *Resp.* at ¶ 12(D). He notes that he had been removed from the water. *Id.*

According to Oliver, Compton was fed bologna sandwiches instead of regular meals because he refused the regular meals served him and threw his trays of regular food out into the day-room area. *Defts' Ex.* 1 at ¶ 12. Compton, however, states he did not refuse any regular meals. *Resp.* at ¶ 13. Instead, he states the jailer refused to serve him regular meals and also stated that he threw his trays out into the day-room area. *Id.* Compton asserts this is not documented on the jail shift report. *Id.*

On December 2nd Reed recorded a statement about Compton in the jail notes alerting the staff of Compton's desire to see blood during the next incident he was involved in. *Defts' Ex.* 2 at

---

[1]The jail shift report referred to by Compton was not submitted to the court as an exhibit.

page 3.  Reed told staff they needed to take precautionary measures in dealing with Compton.  *Id.*
Compton denies having any knowledge regarding this incident.  *Resp.* at ¶ 20.

On December 2nd jailer Deborah Baker recorded a statement about Compton in the jail notes
indicating Compton had made threats to sexually assault her.  *Defts' Ex.* 2 at page 1.  She reported
Compton stated the next incident he would get blood from a jailer.  *Id.*  Compton denies having any
knowledge regarding this incident.  *Resp.* at ¶ 21.

On December 2nd Reed recorded another jail note that warned that Compton was trying to
lure staff into his cell so he could harm them.  *Defts' Ex.* 2 at page 2.  Reed advised staff to use
precaution.  *Id.*  Compton denies having any knowledge regarding this incident.  *Resp.* at ¶ 22.

Compton indicates he was removed from disciplinary segregation on December 14th.  *Resp.*
at ¶ 14.  On December 16th Compton submitted a grievance about the cruel and inhumane treatment
he received by Oliver and staff when he was placed on administrative segregation on November
23rd.  *Id.* at ¶ 23.  Oliver replied that Compton was placed in segregation for spitting on people and
while in segregation he broke the water sprinkler, flooded the cell, constantly threw his food, and
disrupted the operations of the facility.  *Defts' Ex.* 2 at page 4.  Compton asserts Oliver made this
response without having conducted any type of investigation.  *Resp.* at ¶ 24.

As a result of his confinement to disciplinary segregation, Compton maintains he suffered
the following injuries:  a scar on the back of his right ankle from the shackles; a cold as a result of
the extremely low temperature in the cell; dehydration for a period of nine plus days; bad dreams due
to his experiences; and being left chained to a stool for twelve days and was forced to urinate and
defecate on himself.  *Id.* at ¶ 15.

## II.  Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in
the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III.  Discussion

Defendants have now moved for summary judgment.  First, Defendants argue Compton's claims are barred by the physical injury requirement of the Prison Litigation Reform Act (PLRA). Second, Defendants contend Compton's claims fail because he has presented no evidence that he was deprived of a single, identifiable human need.

#### A.  The Physical Injury Requirement of the PLRA

Codified as 42 U.S.C. § 1997e(e), section 803(d) of the Prison Litigation Reform Act of 1996 (PLRA), provides as follows:  "No Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

Defendants argue that Compton does not allege that he suffered any physical injury and thus § 1997e(e) bars his action.  I disagree.  First, § 1997e(e) merely limits a prisoner's recovery in the absence of physical injury.  It does not bar the cause of action.  *See Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004)(discussing § 1997e(e)'s limitation on damages and its application to all prisoner

lawsuits).  Even in the absence of a physical injury, a plaintiff may recover nominal damages and seek declaratory and injunctive relief where appropriate.  *Id.*  Second, Compton does allege he suffered physical injuries including a scar or scars on the back of his ankle.  Whether these injuries are sufficient for purposes of § 1997e(e) has not been addressed by the Defendants.

### B.  Conditions of Confinement

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."  *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted).  The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones.  *See Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment.  U.S. Const. amend. VIII.  The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime."  *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element.  *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)(*citing Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)).  "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities.  The defendants' conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner"  *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted).  Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety."  *Revels,* 382 F.3d at 875.  The standards against which a court measures

-7-

prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

Keeping these principles in mind, I turn to an examination of the conditions of confinement alleged to exist in this case.  Here, Compton contends that he shackled to a stool that was bolted to the floor for twelve days.  During this time he maintains the cell temperature was extremely cold, he did not have his outer garments, and for at least the first six or seven of these days he could not reach the toilet and was forced to urinate and defecate on himself and/or in the area where he ate and slept.

Defendants submissions indicate Compton was indeed shackled to the stool which was bolted to the floor after he set the sprinklers off.  According to Defendants' records, the incident with the sprinklers occurred on December 1st.  *See Defts' Ex.* 2 at page 3.  There is no indication in the summary judgment record that the shackles were removed at any time prior to Compton being let off disciplinary segregation.  Defendants' records do not clearly indicate when Compton was removed from disciplinary segregation.

The summary judgment record contains no information regarding how often Compton was checked by guards or whether he was checked by medical personnel while shackled.  The court is provided with no information on, among other things, the following:  how often Compton was provided with clean clothing; whether he was released from the shackles for periods of time in order to change into clean clothing and perform basic hygiene; whether he was given opportunities to exercise; whether he was allowed to shower; and whether he was allowed out of the cell for any purpose during the administrative segregation.

I believe there are genuine issues of fact as to whether the restrictive measures used in this case deprived Compton of the minimal civilized level of living.   While the use of shackles is itself not unconstitutional, *see e.g.   Key v. McKinney*, 176 F.3d 1083 (8th Cir. 1999)(no Eighth Amendment violation–Key was in handcuffs and leg shackles for twenty-four hours after being

accused of throwing liquid on a guard–not deprived of bedding, food, or bathroom facilities, and checked on by a nurse and guard at regular intervals), I believe the length of time the shackles are alleged to have been used in this case coupled with the other factors alleged by Compton to exist, the cold temperature, the lack of clothing, no mattress, and the inability to reach the toilet, create genuine issues of fact as to whether he suffered a serious deprivation of the "minimal civilized measure of life's necessities."  *See e.g., Cotney v. Bowers*, No. 2:03-cv-181, 2006 WL 2772775, *8 (M.D. Ala. Sept. 26, 2006)(inmate shackled to the "Chinese toilet"[2] in the cell without the ability to exercise, use the restroom, shower, sit comfortably, sleep comfortably, or change his wet clothing for three days.  Inmate testified he was force to lay in urine covered area due to his shackling and that he was released only briefly from shackles three days later.)

### IV.  Conclusion

For the reasons stated, I recommend the Defendants' motion for summary judgment (Doc. 15) be denied.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 11th day of February 2008.

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

---

[2]A "Chinese toilet consists of a hole in the middle of the cell floor that is covered by a metal grate.  *Cotney v. Bowers*, 2:03-cv-1181, 2006 WL 2772775, *1 n. 3 (M.D. Ala. Sept. 26. 2006).